IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:17-CR-93-1H

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| JAMES BOSTIC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the appeal under Local Criminal Rule of Procedure 58.1(b) by defendant of the conviction and sentence imposed by United States Magistrate Judge Kimberly A. Swank on July 14, 2017, [DE #32]. Defendant timely filed a pro se notice of appeal, [DE #31, #34]. Defendant filed an appeal memorandum by and through counsel, [DE #42], and the government responded, [DE #45]. This matter is ripe for adjudication.

**PROCEDURAL HISTORY**

On March 28, 2017, defendant was indicted for knowingly possessing a prohibited object, to wit: a cell phone, at the Federal Correctional Institution, ("FCI") Butner, North Carolina, in violation of 18 U.S.C. §§ 1791(a)(2) and 1791(b)(4). [DE #1]. On July 11, 2017, defense counsel for defendant filed an unopposed motion for sentencing hearing at the time of arraignment before United States Magistrate Judge Kimberly A. Swank. [DE #27]. On July 14, 2017, defendant filed a consent to proceed before the magistrate judge for arraignment, [DE #29], and for sentencing,

[DE #30]. On that same day, defendant was represented by counsel at the arraignment and sentencing. Defendant does not contest the authority of the magistrate judge. [DE #36 at 4].

Defendant was sentenced to a term of imprisonment of 3 months, consecutive to any sentence he was then serving. [DE #32 at 2]. On July 26, 2017, defendant filed a pro se notice of appeal. [DE #31 and #34]. Trial counsel filed a motion to withdraw, which was granted on September 21, 2017, [DE #37]. On September 26, 2017, counsel for defendant, Rudolph Ashton, filed a Notice of Appearance, [DE #38]. The official transcript of arraignment and sentencing was filed on November 17, 2017, [DE #39]. Defendant requested and was granted an extension of time and timely filed a memorandum under seal on December 28, 2017, [DE #42]. The government filed a response on January 18, 2018, [DE #45].

## STATEMENT OF FACTS

A. Pre-Indictment

Defendant pled guilty to conspiracy to distribute and possess with intent to distribute cocaine and was sentenced to 210 months custody and five years of supervised release in the United States District Court of Maryland on November 5, 2010. [DE #12 at 4]. On October 13, 2016, his sentence was reduced to 168 months. Id. Defendant's projected release date is May 20, 2022. Id.

On December 8, 2016, at approximately 1:20 a.m., while incarcerated at FCI Butner for that offense, D.M. Kornegay ordered defendant to rise from his bunk and submit to a pat search during an unannounced mass search of inmate housing units. [DE #42 at 22-23]. D.M. Kornegay observed defendant acting in a nervous manner and moving his hands under the blanket. Id. D.M. Kornegay again ordered defendant to stand, and defendant complied. Id. D.M. Kornegay observed defendant still attempted to conceal what was in his hands, and D.M. Kornegay then ordered defendant to release what was in his hands. Defendant gave a cell phone to D.M. Kornegay and was escorted out of his housing unit without incident. Id.

On the same day, D.M. Kornegay generated an incident report at 3:30 a.m., charging defendant with Possession, Manufacture, or Introduction of a Hazardous Tool; Cellular Phone, in violation of Prohibited Act Code 108.[1] [DE #42 at 3, 22-23]. D.M. Kornegay's incident report also stated the FCI Lieutenant's Office was notified. Id. at 22-23. Defendant then appeared for administrative disciplinary proceedings within the prison. [DE #39 at 14-15].

---

[1] The offense of possession of a hazardous tool, including a cell phone, is a Prohibited Act 108 of the Greatest Security Level. 28 CFR § 541.3.

One page is included in defendant's memorandum of appeal from the FCI Lieutenant's Incident Report, stating that the investigation of defendant began at 7:52 a.m. on the same day of the offense, December 8, 2016. [DE #42 at 24]. Defendant was advised of his right to remain silent at 7:53 a.m. on the same day and advised "[y]our [s]ilence [m]ay [b]e [u]sed [t]o [d]raw [a]n [a]dverse [i]nference [a]gainst [y]ou [a]t [a]ny [s]tage [o]f [t]he [d]iscipline [p]rocess. Your [s]ilence [a]lone [m]ay [n]ot [b]e [u]sed [t]o [s]upport [a] [f]inding [t[hat [y]ou [h]ave [c]ommitted [a] [p]rohibited [a]ct." Id. Defendant was provided written notice of the charge when the incident report was delivered to him at 7:54 a.m. Id. at 22-24. Defendant stated he understood his rights and did not offer a statement. Id. at 24. The FCI Lieutenant kept defendant in the Special Housing Unit and referred his report to the Unit Discipline Committee ("UDC") for further review. Id. at 24. The FCI Lieutenant's incident report stated the investigation was completed at 8:45 a.m.[2] Id. at 24.

---

[2] Defendant's memorandum only includes one page of the incident report of the FCI Lieutenant, which is entitled, "Part III Investigation." [DE #42 at 24]. Although defendant made no statement during the near hour of investigation by the FCI Lieutenant, section 26 of the FCI Lieutenant's report provides "[b]ased on the reporting staff members statement as outlined in Section 11, and the investigative report, I find the charge 108 to be supported and warranted." [DE #42 at 24]. While section 11 is not included in the one page submitted of the FCI Lieutenant's report, the "reporting staff member" was D.M. Kornegay whose incident report, discussed supra, was completed at 3:30 a.m. on the morning of the incident and who referred the matter to the FCI Lieutenant's Office. See DE #42 at 22-23.

On December 15, 2016, the UDC issued a report, which provided under the section "Comments of Inmate to Committee Regarding Above Incident" that "[i]nmate Bostic stated he understood his rights. When asked if the smart phone was in his possession, he stated 'yes.'" Id. at 22-23. The UDC referred the charge to the Discipline Hearing Officer, ("DHO"), "due to its severity." Id. The UDC recommended loss of good conduct time, loss of telephone privileges, and/or commissary privileges. This report was signed by the UDC Chairman at 2:32 p.m. Id.

Also on December 15, 2016, defendant was advised of his Inmate Rights at Discipline Hearing and Notice of next available Discipline Hearing. Id. at 3, 25-26. Defendant signed both forms and advised he did not wish to have a staff representative or witnesses at the DHO hearing. Id. at 26.

On January 5, 2017, the discipline hearing was held before DHO Metzger. Id. at 27. On February 6, 2017, DHO Metzger issued a report based on the hearing. Id. at 27-29. DHO Metzger read Section 1 of the incident report to defendant and asked defendant if it were true. Id. at 27. Defendant said the report was true and admitted he was guilty. Id. Defendant stated he found the cellphone while walking in the track in outside recreation a couple of days prior to the incident and used it a few times to call his family about personal issues. Id. DHO Metzger found defendant

guilty of possessing a cell phone, Prohibited Act 108, based upon the eye-witness account of D.M. Kornegay and defendant's own admission at the DHO hearing.  Id. at 28.  DHO Metzger sanctioned defendant by disallowing 40 days of good conduct time; placing defendant in 45 days disciplinary segregation; denying commissary for 4 months; denying telephone privileges for 12 months; and denying visitation for 12 months.  Id. at 29; [DE #39 at 17-18].

Defendant was in solitary confinement for five months, until on or about May 8, 2017.  [DE #39 at 17-19; DE #42 at 3].

On February 18, 2017, defendant filed an appeal of the DHO's imposition of sanctions.  [DE #42 at 3, 30].  This appeal was received on March 14, 2017.  Id.  The appeal being defective in form, defendant refiled the appeal, which was received on April 21, 2017.  Id. at 30-34.

On March 2, 2017, defendant was provided an Advice of Rights at his interrogation.  Id. at 35-36.  He refused to make a statement.  Id.  During the period of March 2, 2017 to March 7, 2017, a BOP investigative report was compiled with information about defendant and three other inmates, including the fact that defendant had admitted to possessing the cell phone to both the UDC and DHO.  Id. at 37-43.  All four inmates were referred to the United States Attorney's Office in the Eastern District of North

Carolina for prosecution.  Id. at 43.  The indictment was issued on March 28, 2017.  [DE #1].

B. Post-Indictment and Pre-Arraignment

On April 21, 2017, the Regional Administrative Remedy Appeal filed initially on February 18, 2017, was denied by the Regional Director.  [DE #42 at 44].  In his denial of the appeal, the Regional Director provided "[t]he discipline record indicates the incident was not referred to the FBI for possible prosecution at any level of the institution discipline process.  Accordingly, no suspension of the incident report was required.  The sanctions were available to the DHO for a prohibited act in the Greatest Severity category."  Id.

On June 28, 2017, defendant appealed the decision of the Regional Director on the basis that the Regional Director incorrectly stated his matter was not referred to the FBI for possible prosecution, and in fact his indictment had issued on March 28, 2017,  [DE #1, #42 at 45]. Defendant appealed on the basis that he had been questioned by staff and sanctioned prior to investigation by SIS [Special Investigative Supervisor], and that his case had been improperly tracked, in contradiction of Bureau

of Prisons ("BOP") Program Statement 1350.01(2)(a). [DE #42 at 45-46].[3]

C. Arraignment

On July 14, 2017, magistrate judge found defendant competent to appear, and defendant pled guilty to one count of possession of contraband in prison, in violation of 18 U.S.C. § 1791(a)(2) and (b)(4). [DE #39 at 10-15]. There was no plea agreement. Id. at 13.

The government proffered a factual basis for the offense and referenced the statement made by defendant in an administrative proceeding that he had possessed a cell phone in prison. Id. at 14-15. The government's proffer included the statement from D.M. Kornegay's incident report that when he ordered defendant in his cell to submit to a pat search during the unannounced mass search of inmate housing units, defendant complied on the second order to submit to a pat search by relinquishing a cell phone. Id. The government also proffered as the factual basis that "[defendant] appeared before administrative disciplinary proceedings within the prison [where] he admitted possessing the cell phone." Id. at 15. The Magistrate Judge inquired of defendant's counsel, "[a]ny

_____

[3] Finally, defendant filed a petition for writ of habeas corpus on November 15, 2017 in the District of Massachusetts. [Case No. 1:17-CV-12254-MGM DE #1].

objections to the Government's proffer?"  Id. at 15.  Defense counsel responded, "[n]o, Your Honor."  Id.  The magistrate judge found defendant's plea to be knowing and voluntary.  Id. at 15.

D. Sentencing

Immediately following arraignment, the magistrate judge proceeded with sentencing on July 14, 2017.  Id.  The government stated defendant had admitted to his conduct and was cooperative with officers.  Id. at 16.  Defendant was sentenced to three months consecutive to the sentence he was then serving.  [DE #32].

Defendant filed a notice of appeal of the magistrate judge's decision on July 26, 2017.  [DE #31, #34].  First, defendant contends the BOP did not follow its regulations because it did not advise defendant of his rights before his admission.  Second, defendant contends the BOP did not follow its regulations because it should have suspended its own investigation when it became clear that the matter would be referred for criminal prosecution.  Third, defendant contends the BOP violated his Fifth Amendment right against self-incrimination by referring his case to the U.S. Attorney's Office for criminal prosecution after obtaining an admission from defendant.  Fourth, defendant contends the U.S. Attorney's Office violated his Fifth Amendment right against self-incrimination by using his admission at arraignment.  Fifth, defendant contends his Fifth Amendment right of protection from

Double Jeopardy was violated because he was punished with both administrative sanctions and a three month term of imprisonment.

## COURT'S DISCUSSION

### I.    Standard of Review

A defendant may appeal from a conviction or sentence entered by a magistrate judge within 14 days of its entry. Fed. R. Crim. P. 58(g)(2)(B). On appeal, the defendant is not entitled to a trial de novo by the district judge; rather "[t]he scope of the appeal is the same as in an appeal to the court of appeals from a judgment entered by a district judge." Fed. R. Crim. P. 58(g)(2)(D); see United States v. Bursey, 416 F.3d 301, 305 (4th Cir. 2005) ("Findings of fact made by the trial court are reviewed for clear error, and issues of law (such as the interpretation of statutes and regulations) are reviewed de novo.") (citing United States v. Leftenant, 341 F.3d 338, 342-43 (4th Cir. 2003).

Where error is not raised below, but is raised for the first time on appeal, the court reviews the claim for plain error. United States v. Tate, 845 F.3d 571, 575 (4th Cir. 2017) (citing Fed. R. Crim. P. 52(b) and Puckett v. United States, 556 U.S. 129, 135 (2009)). "Plain error analysis has four prongs: (1) there must be an error; (2) the error must be plain; (3) the appellant's 'substantial rights' must be affected by the error; and (4) the

error must seriously affect the 'fairness, integrity or public reputation of judicial proceedings.'" Id. (citing Puckett, 556 U.S. at 135).

The five issues on appeal were not raised by defendant before the Magistrate Judge, and thus the court reviews for plain error. Id. at 575.

## II. BOP did not follow its own regulations – advice of rights

First, defendant contends he was not advised of his rights by the BOP before admitting to possession of the cell phone. The court notes defendant was advised of his right to remain silent on December 8, 2016, at 7:53 a.m. on the morning of the incident. [DE #42 at 24]. He stated he understood his right to remain silent, and he did not make a statement to the FCI Lieutenant on the morning he was advised of his right to remain silent. Id. at 24. He made his first admission of possession of the cell phone before the UDC on December 15, 2016, one week after he was advised of his right to remain silent. Id. at 22-23. Also on December 15, 2016, he was advised that he would have the right to remain silent at his DHO hearing, and he signed a statement acknowledging this right. Id. at 25. At his DHO hearing on January 5, 2017, defendant again admitted to possession of the cell phone. Id. at 27. Thus, defendant was twice advised of his right to remain silent, on December 8 and 15, 2016, before making the two

admissions that he possessed a cell phone on December 15, 2016 and January 5, 2017.  Id. at 22, 23, 27, 28.  The court notes defendant does not contest his understanding of his right to remain silent and further notes defendant did not make a statement on December 8, 2016 and March 2, 2017, when he was advised of his right to remain silent when FCI Lieutenant Investigation report and the BOP Investigation Report commenced, respectively.  Id. at 24, 40.

Therefore, defendant has failed to carry his burden on appeal.

## III. BOP did not follow its own regulations – suspension

Defendant contends that the regulations require that when it appears likely that the incident may involve criminal prosecution, the prison should suspend the investigation, not questioning the inmate, until the investigative agency releases an incident report for administrative processing, and that the staff at FCI Butner should have suspended the investigation at an earlier stage.  [DE #42 at 4]; 28 CFR § 541.5(b)(2) ("However, the staff investigation of the incident report may be suspended before requesting your statement if it is being investigated for possible criminal prosecution.")  "Staff may not question the inmate until the FBI or other investigative agency releases the incident report for administrative processing."  BOP Program Statement 5270.09 Inmate Discipline Program at 18 (available at https://www.bop.gov/policy/progstat/5270_009.pdf) (last accessed on April 3, 2018).

"The discipline process starts when staff witness or reasonably believe that [an inmate] committed a prohibited act," and issue an incident report.  28 CFR § 541.5(a).  "[An inmate] will ordinarily receive the incident report within 24 hours of staff becoming aware of [an inmate's] involvement in the incident."  Id.

Defendant's incident occurred on December 8, 2016, the same day his incident report was issued by D.M. Kornegay.  [DE #42 at 22, 23].  Defendant made his first admission on December 15, 2016, at his hearing before the UDC, which occurred in accordance with BOP regulations.  The UDC is required to review the incident report within five work days of its issuance, excluding weekends and holidays, unless such review is suspended "for referral to another agency for possible prosecution."  28 CFR § 541.7(c).  Because of the nature of the charge, a hearing before the DHO was required.  See 28 CFR § 541.7(a)(4).  This hearing was held on January 5, 2017, at which time defendant made his second admission.  Defendant was indicted on March 28, 2017.  [DE #1].

Even if the BOP had known on the date of the incident that it would be referred for criminal prosecution and had suspended further investigation before defendant made an admission, the incident report would still have been created pursuant to 28 CFR § 541.5(a).  D.M. Kornegay stated in his incident report that he was an eye-witness to defendant handing him a cell phone that was

in defendant's possession. [DE #42 at 22, 23]. The strength of the government's case did not rely exclusively on the two admissions at defendant's arraignment and sentencing because the government also proffered that the reporting officer observed the cell phone in defendant's possession in the cell, and defendant relinquished the cell phone directly into the hands of the officer. [DE #39 at 14-15]. This incident report provided substantial evidence to support the conviction, notwithstanding defendant's admission. Thus, even if the BOP should have suspended the investigation prior to early March 2017, the incident report provided sufficient evidence for the government.

Therefore, defendant has failed to carry his burden on appeal.

## IV. Fifth Amendment Violation – referring admission to U.S. Attorney's Office for criminal prosecution and use of admission at arraignment and sentencing hearing

Defendant alleges that the BOP erred in gathering his admission through the administrative process first and then providing this admission to the United States Attorney's Office in order to seek an indictment and bring the case to federal court. [DE #42 at 4]. Defendant further alleges the government erred in using his admission during the proffer at arraignment as a factual basis for his guilty plea and using his admission at sentencing. [DE #39 at 15-16].

The Fifth Amendment provides "[n]o person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The scope of proceedings within a "criminal case" has been interpreted differently among the circuits.

A. Referring Admission to U.S. Attorney's Office for Criminal Prosecution

Defendant argues the use of his statement violated his Fifth Amendment rights because his admission to a criminal offense, possessing a cell phone in prison, was referred to the Office of the United States Attorney for criminal prosecution.  Defendant also contends that he would not have made an incriminating statement at the administrative hearing at FCI Butner had he known his case was being referred to the U.S. Attorney's Office.

The Fourth Circuit has held "[plaintiff] does not allege any trial action that violated his Fifth Amendment rights; thus, ipso facto, his claim fails on the [Chavez] plurality's reasoning." Burrell v. Virginia, 395 F.3d 508, 514 (4th Cir. 2005).

The Fourth Circuit has rendered an opinion on the issue of whether a compelled statement can be used to seek an indictment in Burrell, 395 F.3d at 513-14.  In Burrell, the Fourth Circuit addressed the issue of whether a defendant's Fifth Amendment rights had been violated by the issuance of a summons to appear in court after defendant refused a request for insurance information at the scene of an accident.  Burrell, 395 F.3d at 510.  Driving an

uninsured vehicle and failing to pay the uninsured motorist fee is a crime in Virginia, and it was for violation of this law as well as obstruction of justice, that the defendant in Burrell was summoned to court.  Burrell, 395 F.3d at 511 n.1.

The Fourth Circuit relied on the Supreme Court's decision in Chavez v. Martinez, 538 U.S. 760 (2003), which held "a violation of the constitutional right against self-incrimination occurs only if one has been compelled to be a witness against himself in a criminal case."  Chavez, 538 U.S. at 770.  The defendant in Chavez was never prosecuted based on an allegedly coercive interrogation. Burrell, 395 F.3d at 513.  The Chavez court determined no constitutional violation had occurred as "the compelled testimony was never admitted in court."  Id.  The Fourth Circuit found the defendant in Burrell, likewise, "does not allege any trial action that violated his Fifth Amendment rights."  Id. at 514 (emphasis in original).

To the extent the Fourth Circuit has found no Fifth Amendment violation exists when an indictment is sought based on a defendant's admission, defendant simply preserves this issue on appeal pending resolution of the Tenth Circuit case before the Supreme Court to resolve the circuit split, City of Hays v. Vogt, 844 F.3d 1235 (10th Cir. 2017), cert. granted, 86 U.S.L.W. 3125 (U.S. Sept. 28, 2017) (No. 16-1495).

Therefore, defendant has failed to carry his burden on appeal.

B. Use of Admission at Arraignment and Sentencing

The court is aware of the circuit split and a Tenth Circuit case that is currently pending before the Supreme Court on the issue of whether the Fifth Amendment right against self-incrimination is violated when statements made during an administrative hearing are subsequently used in a criminal case, City of Hays v. Vogt, 844 F.3d 1235 (10th Cir. 2017), cert. granted, 86 U.S.L.W. 3125 (U.S. Sept. 28, 2017) (No. 16-1495).

Three[4] circuits, including the Third, Fourth, and Fifth, have taken the position that the Fifth Amendment privilege against self-incrimination is a fundamental trial right which can be violated only at trial. See Renda v. King, 347 F.3d 550, 559 (3d Cir. 2003) ("[O]ur prior decision in Guiffre compels the conclusion that it is the use of coerced statements during a criminal trial, and not in obtaining an indictment, that violates the Constitution."); Burrell, 395 F.3d at 514 ("[The plaintiff] does not allege any trial action that violated his Fifth Amendment rights; thus, ipso facto, his claim fails on the [Chavez] plurality's reasoning."); Murray v. Earle, 405 F.3d 278, 285 (5th Cir. 2005) ("The Fifth Amendment privilege against self-incrimination is a fundamental

_____

[4] See also Smith v. Patterson, 430 F. App'x 438, 441 (6th Cir. 2011) ("[W]hen the government does not try to admit the confession at a criminal trial, the Fifth Amendment plays no role."), but see Graiser v. Visionworks of America, Inc., 819 F.3d 277, 283 (6th Cir. 2016) (the court's unpublished opinions do not constitute binding precedent even within the Sixth Circuit).

trial right which can be violated only at trial, even though pre-trial conduct by law enforcement officials may ultimately impair that right.").

Four other circuits, including the Second, Seventh, Ninth, and Tenth Circuits, have determined that a compelling statement does not have to be introduced at trial to violate an individual's Fifth Amendment rights if the statements are used at various pre-trial proceedings. Higazy v. Templeton, 505 F.3d 161, 171-73 (2d Cir. 2007) (Fifth Amendment protection extends to bail hearings); Sornberger v. City of Knoxville, 434 F.3d 1006, 1027 (7th Cir. 2006) (Fifth Amendment trial action includes bail hearings, arraignments, and probable cause hearings finding probable cause to indict); Best v. City of Portland, 554 F.3d 698, 703 (7th Cir. 2009) (Fifth Amendment trial action includes suppression hearings); Stoot v. City of Everett, 582 F.3d 910, 925 (9th Cir. 2009) ("A coerced statement has been 'used' in a criminal case when it has been relied upon to file formal charges against the declarant, to determine judicially that the prosecution may proceed, and to determine pretrial custody status."); City of Hays v. Vogt, 844 F.3d 1235 (10th Cir. 2017), cert. granted, 86 U.S.L.W. 3125 (U.S. Sept. 28, 2017) (No. 16-1495).

At arraignment, the government also stated that an officer had seen the cell phone in possession of defendant while incarcerated, and in fact reported that defendant handed the cell

phone to the officer in his cell. [DE #39 at 14-15]. Thus, even
if a Fifth Amendment violation occurred by the BOP's referral of
defendant's admissions made during an administrative hearing to
the Office of the United States Attorney for the sake of seeking
an indictment, defendant has not shown that it "seriously
affect[ed] the 'fairness, integrity or public reputation of
judicial proceedings.'" Tate, 845 F.3d at 575 (citing Puckett,
556 U.S. at 135).

## V. Fifth Amendment Double Jeopardy Violation — criminal prosecution after administrative sanctions

Defendant also argues his criminal prosecution and sentence
violated the double jeopardy clause because he had already been
punished with solitary confinement, and the magistrate judge
sentenced defendant to three months of imprisonment consecutive to
the sentence he was already serving. [DE #32 at 2].

The Double Jeopardy Clause of the Fifth Amendment provides
"[n]o person shall . . . be subject for the same offence to be
twice put in jeopardy of life or limb." U.S. Const. amend. V.
The Supreme Court has held "[w]e have long recognized that the
Double Jeopardy Clause does not prohibit the imposition of all
additional sanctions that could, 'in common parlance,' be
described as punishment." See Hudson v. United States, 522 U.S.
93, 98-100 (1997) (citing United States ex rel. Marcus v. Hess,
317 U.S. 537 (1943), superseded by statute on other grounds as

stated in <u>Schindler Elevator Corp. v. U.S. ex rel. Kirk</u>, 563 U.S. 401, 412 (2011)).

The Fourth Circuit has held that the Double Jeopardy Clause provides no protection from criminal prosecution for misconduct that resulted in prison sanctions. <u>Patterson v. United States</u>, 183 F.2d 327, 328 (4th Cir. 1950) ("Criminal prosecution for the crime of escape is not prohibited under the double jeopardy clause of the fifth amendment because a convict guilty thereof has upon his recapture been subjected to discipline by the prison authorities for the violation of prison discipline involved."); <u>see</u> <u>United States v. Green</u>, 508 F. App'x 206, 207 (4th Cir. Jan. 29, 2013) (citing <u>Patterson</u>, 183 F.2d at 328; <u>United States v. Simpson</u>, 546 F.3d 394, 398 (6th Cir. 2008) (en banc) (collecting cases and holding that "[t]he Double Jeopardy Clause was not intended to inhibit prison discipline, and disciplinary changes in prison conditions do not preclude subsequent criminal punishment for the same misconduct.")); <u>see</u> <u>also</u> <u>United States v. Garcia</u>, 496 F. App'x 335, 336 (4th Cir. Nov. 8, 2012) (same); <u>United States v. Moss</u>, 445 F. App'x 632, 634-35 (4th Cir. Sept. 7, 2011) (same); <u>United States v. Devaughn</u>, 32 F. App'x 60, 61 (4th Cir. Apr. 22, 2002) (same) (collecting published cases from six circuits); <u>United States v. Washington</u>, No. 5:11-CR-207-BO, 2011 WL 5828400, at *1 (E.D.N.C. Nov. 18, 2011) (same); <u>United States v. Thigpen</u>,

No. 5:11-CR-103-BR, 2011 WL 5101869, at *2 (E.D.N.C. Oct. 26, 2011) (same); United States v. Ezzat, 811 F.Supp.2d 1204, 1214 (E.D.N.C. 2011) (same).

Therefore, this argument is without merit.

## CONCLUSION

Having carefully reviewed this matter and finding the Magistrate Judge's decision in accordance with law, the appeal is DENIED. The order and judgment of the Magistrate Judge are hereby AFFIRMED.

This 12th day of April 2018.

_____
MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#35